## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY R., | : | CIVIL ACTION |
| | : | |
| AND | : | |
| | : | |
| NANCY R. AND CHARLES R., | : | |
| INDIVIDUALLY, AND ON THEIR OWN | : | |
| BEHALF, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE UPPER MERION AREA SCHOOL DISTRICT, | : | |
| 435 Crossfield Road, | : | |
| King of Prussia, PA 19406, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | NO: |

## COMPLAINT

### I. Preliminary Statement

1.     Jeffrey R. is a disabled young adult (age 18) who has been diagnosed as having

Attention Deficit Hyperactivity Disorder-Inattentive type ("ADHD"), auditory memory deficits,

and significant emotional needs, which, due to the utter lack of appropriate special education

interventions by the Defendant Upper Merion School District ("Defendant" or "District"),

manifested in chronic school avoidance behavior.  Jeffrey and his parents, Nancy R. and Charles

R., ("Parents") (collectively referred to as "Plaintiffs" or "family") bring this action against the

District for its violations of the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C.

§ 1400 et seq.,[1] Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C.A. §

---

[1] As amended, 20 U.S.C. Section 601 et seq., entitled Individuals with Disabilities
Education Improvement Act of 2004.

794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12101, et seq..[2]

## II. Administrative Proceedings

2.     On December 5, 2008, the family filed a timely request for an administrative special

education due process hearing with the Office for Dispute Resolution seeking an Order from a

Pennsylvania Special Education Hearing Officer ("Hearing Officer") directing the Defendant to

fund an Independent Educational Evaluation ("IEE") at public expense; to find Jeffrey eligible

for special education services; to provide Jeffrey with an appropriate educational program and

placement; to award compensatory education from Jeffrey's 2006-2007 ninth grade school year

through the present; and to reimburse the family's reasonable attorneys fees and costs.

3.     The Hearing Officer agreed to first hear evidence and issue an interim order

regarding the appropriateness of the District's Evaluation Report and the family's request for an

IEE at public expense. After four hearing sessions held on January 30, 2009, March 9 and 25,

2009, and May 11, 2009, the Hearing Officer determined that the District's ER was not

appropriate, and issued an interim Order dated July 8, 2009, granting the family's request for an

IEE.

4.     The family obtained an IEE, which included a comprehensive evaluation of

Jeffrey's educational needs, including achievement and emotional assessments. The independent

evaluator, Dr. Nancy Bloomfield, concluded that Jeffrey qualified for special education services

under the IDEA and Section 504, that his truancy was a manifestation of his unaddressed special

education needs, and recommended that he receive special education programming to address his

educational needs.

---

[2] As amended, 42 U.S.C.A. §12101, et seq., entitled the Americans with Disabilities
Amendments Act of 2008, effective as of January 1, 2009.

5.      The due process hearing sessions resumed on December 1, 2009 and December 3, 2009, where the Hearing Officer heard evidence from Dr. Bloomfield's regarding her evaluation and conclusions, Jeffrey's eligibility for special education services. Further, the Hearing Officer considered the family's claim for compensatory education.

6.      By a final Order dated February 13, 2010, the Hearing Officer[3] determined that 1) the evaluation conducted by the District was not appropriate; 2) the family was entitled to an IEE at public expense; 3) the District failed its child find obligations by not identifying Jeffrey as a protected handicapped student under Section 504, and therefore denied him a free appropriate public education ("FAPE"); 4) the District was required to meet and develop an appropriate Section 504 Service Plan within ten school days of the Order; 5) the District must compensate Dr. Bloomfield for her attendance at the meeting to develop the Section 504 Service Plan; and 6) Jeffrey was entitled to three hours of compensatory education for each day he was present in school from May 16, 2008 through the end of the school year in June 2008, and from September 2008 to January 31, 2009.

7.      However, the Hearing Officer erroneously failed to find Jeffrey eligible under IDEA, inappropriately found that the District's denial of FAPE commenced as of May 16, 2008, rather than the beginning of the 2006-2007 school year, and, disturbingly, found that Jeffrey's then-current placement was appropriate – although the District was not providing Jeffrey with any special education services at that placement.

8.     Further, the Hearing Officer inappropriately failed to award reimbursement for

---

[3] After the final December 3, 2009 hearing session, the Hearing Officer who presided over all hearing sessions was required to take a medical leave of absence. Therefore, a second Hearing Officer was assigned to this matter who, in consultation with the initial Hearing Officer, issued the February 13, 2010 Decision and Order.

expenses incurred in providing Dr. Bloomfield's testimony, failed to award full days of compensatory education, fashioned the award as an "equitable remedy" and, worse, limited the award of compensatory education to only those days that Jeffrey attended school, despite Dr. Bloomfield's extensive findings that his truancy was a manifestation of his disabilities.

9.      In applying a two-year statute of limitations to Plaintiffs' compensatory education claims, and therefore limiting these claims to the period from December 5, 2006 to the present, the Hearing Officer incorrectly found that: 1) a two year statute of limitations applied to Plaintiffs' compensatory education claims under both the IDEA and Section 504; and 2) Plaintiffs failed to meet the statutory exceptions to the statute of limitations under IDEA-2004. The Hearing Officer therefore barred consideration of the District's liability for the period pre-dating the two year statute of limitations. The Hearing Officers in the administrative process do not possess jurisdiction over claims under the ADA, and Plaintiffs contend before this Court that since the ADA involves no statute of limitations to bar the claims beyond two years in this matter, this Court should grant relief prior to December 5, 2006.

10.     The Plaintiffs therefore bring this action requesting review and reversal of the Hearing Officer's decision to apply a two year statute of limitations; failure to find Jeffrey eligible under IDEA, finding his placement appropriate since January 2009; and failure to award full days of compensatory education since the 2006-2007 school year. Plaintiffs also seek compensatory damages under Section 504 and the ADA, together with reasonable attorneys fees and costs under the IDEA, Section 504 and the ADA.

III.    **Parties**

11.    Jeffrey is an eighteen year-old student with disabilities who is eligible for special

education services under the IDEA under the categories of Emotional Disturbance, Other Health

Impairment and Specific Learning Disability in Reading and auditory memory, as defined under

the IDEA. See, 34 C.F.R. §§ 300.8 (c)(4), (9) and (10). Due to his disabilities, Jeffrey is a

qualified individual with a disability as defined under the ADA and a qualified handicapped

person as defined under Section 504. 42 U.S.C.A. § 12102, 34 C.F.R. § 104.3, respectively.

Jeffrey has resided within the boundaries of the Upper Merion Area School District at all times

relevant to this Complaint.

12.    Nancy R. and Charles R. are Jeffrey's parents, and have resided with him within

the boundaries of the Upper Merion Area School District at all times relevant to this Complaint.

13.    The Upper Merion Area School District, located at 435 Crossfield Road, King of

Prussia, PA 19406, is the recipient of several sources of federal funds, is a public entity, and is an

educational agency designated by Pennsylvania law and the Pennsylvania Department of

Education for the provision of educational services to individuals residing within its boundaries;

such services include those which are mandated under IDEA, Section 504 and the ADA, as well

as Pennsylvania's statutory/regulatory scheme concerning young children with disabilities. 11

P.S. Section 875-101; 22 Pa. Code Section 14.131 to 14.133; see also, e.g.: 24 P.S. Chapter 13;

and 22 Pa. Code Chapters 14 and 15.

IV.    **Jurisdiction and Venue**

14.    This Court has original jurisdiction over this appeal pursuant to 28 U.S.C. § 1331,

as this case raises federal questions under the IDEA, Section 504 and the ADA.

15.    Jeffrey and his parents have exhausted their administrative remedies as required

under 20 U.S.C. § 1415(i), having timely pursued a due process hearing.  22 Pa. Code §
14.162(o).

16.     The family's claims and remedies are authorized by 20 U.S.C. § 1415; 29 U.S.C.
§ 794(a); 42 U.S.C. § 12133; and 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any
further relief deemed necessary and proper.

17.     All of the District's actions complained of herein have taken place within the
jurisdiction of the United States District Court for the Eastern District of Pennsylvania.  Venue is
appropriate in this District pursuant to 28 U.S.C. § 1391.

## V.  Statutory and Regulatory Background

18.     The purpose of the IDEA is to ensure that "all children with disabilities have
available to them a free and appropriate public education that emphasizes special education and
related services designed to meet their unique needs and prepare them for further education,
employment, and independent living."  20 U.S.C. § 1400 (d)(1)(A).

19.     IDEA and the regulations thereunder, 34 C.F.R. § 300.100 et seq. and 22 Pa. Code
Chapter 14, require that public school districts provide disabled children with a FAPE, as well as
extensive due process procedures to effectuate that right.  Under the IDEA, a school district is
required to identify every disabled child within its jurisdiction.  34 C.F.R. § 300.101.  This
responsibility is known as the District's "child find" obligation.  20 U.S.C. § 1412 (a)(3); 34
C.F.R. § 300.111.

20.     The IDEA and its regulations establish a comprehensive format by which a child
with a disability must be evaluated, his classification must be determined and an appropriate
program of special education with "related services" must be developed and implemented.  The
program must be developed jointly by school district officials and each disabled child's parents

6

through an Individualized Education Program ("IEP"). The IEP must be reasonably calculated to afford the child the opportunity to receive "meaningful educational benefit." <u>Shore Regional High Sch. Bd. of Educ. v. P.S.</u>, 381 F.3d 194, 198 (3d Cir. 2004); <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238, 247 (3d Cir. 1999); <u>Polk v. Central Susquehanna Intermediate Unit 16</u>, 853 F.2d 171, 184 (3d Cir. 1988). The rights bestowed upon students and families by the IDEA are enforceable through multi-level administrative and judicial procedures. 20 U.S.C. § 1415; 34 C.F.R. §§ 300.507; 300.511- 300.516.

21.    The Supreme Court in <u>Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206-207 (1982) declared that in order to meet the statutory requirements of FAPE under the IDEA, school districts must: 1) conform to the procedural requirements of the Act; and 2) ensure that the eligible student's IEP is reasonably calculated to yield meaningful benefit. The Supreme Court has determined the IEP to be the "primary vehicle" and the "centerpiece of the statute's education delivery system for disabled children," and to embody the substantive standard for school districts' obligation to provide FAPE to children with disabilities. <u>Honig v. Doe</u>, 484 U.S. 305, 311 (1988). Therefore, when an eligible child with a disability is denied an appropriate IEP and the special education and related services described and promised therein, the child is denied FAPE.

22.    The Third Circuit Court of Appeals has also clarified that under the IDEA, a child with a disability is entitled to a program that is reasonably calculated to confer meaningful educational benefit that is more than trivial. <u>Polk v. Central Susquehanna Intermediate Unit</u>, 853 F.2d 171 (3d Cir. 1988); <u>Oberti v. Board of Educ. of Borough of Clementon Sch. Dist.</u>, 995 F.2d 1204, 1213 (3d Cir. 1993); <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238, 247 (3d Cir. 1999). In order to provide meaningful benefit, a child's IEP must be tailored to the unique, individual

7

needs of the child consistent with the child's potential. 34 C.F.R. § 300.347(a).

23.     It is abundantly well settled that "education" extends beyond discrete academic skills, and includes the social, emotional, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential. M.C. v. Central Regional Sch. Dist., 81 F.3d at 393-394; Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d at 181-182; Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 693 (3d Cir. 1981); Armstrong v. Kline, 629 F.2d 269 (3d Cir. 1980); Bucks County Public Sch. v. Department of Educ., 529 A.2d 1201 (Pa. Cmwlth. 1987); Big Beaver Falls Area Sch. Dist. v. Jackson, 615 A.2d 910 (Pa. Cmwlth. 1992). Therefore, for an IEP to be appropriate, it must offer a child the opportunity to make progress which is "meaningful" in all relevant domains under IDEA, including behavioral, social and emotional. M.C., 81 F.3d at 394; Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999).

24.     Under the IDEA, a school district must complete an evaluation of children suspected of needing special education services within sixty (60) days of receiving parental consent for the evaluation, and must have an IEP in place at the beginning of each school year for every exceptional child in its jurisdiction. 20 U.S.C. § 1414 (a)(1); 34 C.F.R. § 300.301(c), 300.323 (a); 22 Pa. Code § 14.123. The evaluation must encompass all suspected areas of the child's disability. 20 U.S.C. § 1414 (b)(3)(B); 34 C.F.R. § 300.304 (c)(4). After the completion of the Evaluation Report ("ER"), the District must provide the parents with a copy of the ER no fewer than ten (10) school days prior to the meeting of the IEP team. 22 Pa. Code § 14.131(a)(1). However, parents may choose to waive this right and proceed to an IEP meeting sooner. Id.

25.     The District *must* conduct a reevaluation at least every three (3) years unless the

8

District and the parents agree that an evaluation is unnecessary.  34 C.F.R. § 300.303(b)(2).  In addition, Pennsylvania's regulations regarding reevaluations require that a certified school psychologist be among the group of qualified professionals which reviews the evaluation materials to determine whether a child is a child with a disability when evaluating a child for autism, emotional disturbance, mental retardation, multiple disabilities, other health impairments, specific learning disability or traumatic brain injury.  22 Pa. Code 14.114(a)(emphasis added).

26.     An IEP must be based upon an appropriate and comprehensive evaluation which identifies the student's complete educational needs.  East Penn Sch. Dist. v. Scott B., 213 F.3d 628 (E.D. Pa. 2000) ("an IEP cannot be appropriate if the evaluation is incomplete.")

27.     The IDEA sets forth the right of a parent to obtain an IEE at public expense if the parent disagrees with the District's ER and the ER is determined inappropriate.  20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1).  "Moreover, the parents' failure to express disagreement with the District's evaluations prior to obtaining their own does not foreclose their right to reimbursement."  Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 87 (3d Cir. 1999).

28.     In Schaffer v. Weast, 126 S. Ct. 528 (2005), the United States Supreme Court expressly stated that parents "have the right to an Independent Educational Evaluation of their child [and IDEA's] regulations clarify this entitlement by providing that a parent has a right to an Independent Educational Evaluation at public expense if the parent disagrees with the evaluation obtained by the public agency.  IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition."  Schaffer, 126 S. Ct. at 536.

9

29.     The IEP is the cornerstone of the special education program for a student.

Honig, 484 U.S. at 311; Ridgewood,  172 F.3d at 247; Matula, 67 F.3d at 492; Polk, 853 F.2d at

173. The IDEA requires that every IEP include a statement of the child's present levels of

academic achievement and functional performance; a statement of measurable annual goals; a

description of how the child's progress toward meeting the annual goals will be measured and

when periodic reports on the progress the child is making toward meeting the annual goals will

be made; a statement of the special education and related services and supplementary aids and

services, based on peer-reviewed research to the extent practicable, to be provided to the child, or

on behalf of the child; a statement of the program modifications or supports for school personnel

that will be provided to enable the child to advance appropriately toward attaining the annual

goals, to be involved in and make progress in the general education curriculum; and an

explanation of the extent, if any, to which the child will not participate with nondisabled children

in the regular class and in activities.  20 U.S.C. § 1414 (d); 34 C.F.R. § 300.320.

30.     It is the District's obligation to create an appropriate IEP.  Shore Regional High

Sch., 381 F.3d at 199; Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 533 (3d Cir. 1995);

Oberti, 995 F.2d at 1219; Furhmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1035 (3d Cir.

1993). Even a parent's failure to participate in a meaningful manner in the IEP process will not

excuse an inappropriate IEP.  Warren G. v. Cumberland Valley Sch. Dist., 190 F.3d 80 (3d Cir.

1999); Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78 (3d Cir. 1996).

31.     The IDEA and Section 504 provide that a party aggrieved has the right to

bring a civil action in federal district court, which conducts an independent review of the

administrative record and any additional evidence presented by the parties.  Shore Regional High

Sch., 381 F.3d at 198; Scott P., 62 F.3d at 527; Matula, 67 F.3d at 492; Susan N. and David N.

10

v. Wilson Sch. Dist., 70 F.3d 751, 756-757 (3d Cir. 1995); Delaware County Intermediate Unit v. Martin K., 831 F. Supp. 1206, 1220 (E.D. Pa. 1993). See, also, 20 U.S.C. 1415 § 615 (i)(2). In addition to compensatory education and reimbursement for private school tuition (among other things), a court may award monetary damages to an aggrieved parent or disabled child who brings a claim under the IDEA and/or Section 504. Matula, 67 F.3d at 495; Enright v. Springfield Sch. Dist., No. Civ. A. 04-1653, 2007 WL 4570970, at *10 (E. D. Pa. Dec. 27, 2007)(Slip copy) (monetary damages awarded under IDEA and Section 504); Damian J. v. Sch. Dist. of Philadelphia, No. 06-3866; Brandon V. v. Chichester Sch. Dist. et al., No. 06-4687, 2007 WL 2155722 (E. D. Pa. July 25, 2007) . Moreover, both Section 504 and the IDEA permit recovery of reasonable attorneys fees by parents who prevail in an action or proceeding thereunder. 20 U.S.C. 1415 § 615 (i)(3)(B); 34 C.F.R. § 300.517; 29 U.S.C. § 794; Andrew M. v. Delaware County Office of Mental Health/Mental Retardation, No. Civ. A. 03-6134, 2005 WL 783070, at *15 (E.D. Pa. Apr. 7, 2005) (attorneys fees recoverable under Section 504); Daniel S. v. Scranton Sch. Dist., 230 F.3d 90, 95 (3d Cir. 2000) (attorneys fees recoverable under IDEA).

32.     Plaintiffs are not required to exhaust their administrative remedies with respect to relief which is not available in an IDEA administrative proceeding prior to bringing an action in federal district court, including relief sought under the ADA. Matula, 67 F.3d at 496. In addition, neither compensatory damages nor attorneys fees and costs are available to plaintiffs at the administrative level.

33.     A compensatory education award should be computed from the time a "district knew or should have known of [the] programmatic deficiency." Ridgewood, 172 F.3d at 249; M.C., 81 F.3d at 396. The Third Circuit and the Pennsylvania Commonwealth Court have recognized that compensatory education is available for periods of time when a student has not

been provided with an appropriate IEP or where the evidence shows that the District knew or

should have known of the student's need for one. Ridgewood, 172 F.3d at 249-250;  Big Beaver

Falls Area Sch. Dist., 615 A.2d at 915.

34.     It is well-established that compensatory education is an in-kind remedy intended

to provide educational services denied to a child by a school district's failure to provide a FAPE.

Lester H., 916 F.2d at 873. Once a factfinder has determined that a student has been denied a

FAPE, the remedy is automatic, as the student is entitled to full days of compensatory education

for each school day that the District failed to offer him an appropriate IEP.  A child's entitlement

to compensatory education in an amount equal to the deprivation was established by the Third

Circuit in Lester H., a case in which the court granted day for day compensatory education for the

school district's failure to provide a free appropriate public education to a student for two and

one-half years. Lester H., 916 F.2d 865 (3d Cir. 1990)

35.     The right to full days of compensatory education as a remedy for a denial of FAPE

was unequivocally confirmed by Judge Sanchez in Damian J. v. School District of Philadelphia,

No. Civ. A. 06-3866, 2008 WL 191176, at *7, n. 16 (E. D. Pa. Jan. 22, 2008) (Slip copy) (citing

Keystone Central School District v. E.E., 438 F.Supp.2d 579 (M. D. Pa. July 10, 2006).  In

Keystone, the reasoning of which was adopted in Damian J., the court rejected the district's

claim that only partial school days of compensatory education should be awarded to remedy the

district's denial of FAPE to an eligible student.  The court refused to "place an arduous and near-

impossible task upon the administrative bodies to parse out the exact amount of hours [the

student] was not benefitted by the inappropriate IEP."  Id. at 536.  The court also held, as have

12

many Pennsylvania appeals panels[4], that the student's parent should determine the nature and scope of compensatory education without the need to "incorporate the District in the implementation and use of the compensatory education award [as] it is illogical to force the student to receive compensatory education through the District, which is the entity that failed to provide him with FAPE in the first place." Id. See, also, Lauren P. v. Wissahickon Sch. Dist., 2007 WL 1810671 (E.D. Pa. June 20, 2007); Penn Trafford Sch. Dist. v. C.F., No. 04-1395, 2006 WL 840334, at *9 (W. D. Pa. 2006)(upholding award of compensatory education under IDEA for "the period of the deprivation, the 2002-2003 and 2003-2004 school years.)

36.    When a District fails to provide FAPE under both the IDEA and Section 504, it is well-settled that compensatory education is an available remedy for the student. Lester H. v. Gilhool, 916 F.2d 865 (3d Cir. 1990); Ridgewood, 172 F.3d at 250, n.11; M.C., 81 F.3d at 397.

37.    Section 504 and the ADA provide additional protections for children with disabilities. The ADA defines an individual with a disability as an individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102. For purposes of Title II of the ADA, a "qualified individual with a disability" is defined as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131.

---

[4]See, Special Education Appeals Panel Decisions Nos. 1563, 1499, 1179, 1122, 1098, 1082, 1070, 1054, 1046, 1042, 1027, 1024, 999, 992, 989, 961, 946, 918, 830, 766, 723, 697.

38.     Title II of the ADA prohibits discrimination against a qualified individual with a disability by public entities, including any state or local government, department, agency or other instrumentality thereof, like the Defendant. 42 U.S.C. §§ 12131, 12132. The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Third Circuit has held that the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." Jeremy H. v. Mount Lebanon Sch. Dist, 95 F.3d 272, 279 (3d Cir. 1996). That court held that "the remedies, procedures, and rights" applicable to Section 504 claims are the same as those under the ADA. Id.; see, also, Tereance D. v. School Dist. of Philadelphia, 548 F.Supp.2d 162, 169-70 (E. D. Pa. 2008) (applying same analysis to claims under the ADA as to claims under Section 504); Indiana Area Sch. Dist. v. H.H., 428 F.Supp.2d 361, 363 n.3 (W. D. Pa. 2006) ("[T]he Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA.").

39.     Section 504 provides additional protections for children with disabilities by prohibiting discrimination against handicapped persons in federally funded programs such as public education. Section 504 and its regulations require the identification of all disabled children and the provision of appropriate educational services. 29 U.S.C. § 794; 34 C.F.R. § 104.1 et seq.

40.     Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially  limits  one or more major life activities." 34 C.F.R. § 104.3. The term "physical or mental impairment" is defined as "any physical or

psychological disorder such as . . . emotional or mental illness and specific learning disabilities."
Id. The term "major life activities" is defined as "functions such as caring for one's self . . .
learning, and working." Id.

41.    Section 504 provides specific requirements for public school systems to protect all
handicapped students, even those who may not qualify under the categorical listings of IDEA.
Section 504 requires that "a public elementary or secondary education program shall annually
undertake to identify and locate every qualified handicapped person residing in the recipient's
jurisdiction who is not receiving a public education and take appropriate steps to notify
handicapped persons and their parents or guardians of the recipient's duty under this subpart." 34
C.F.R. § 104.32; Ridgewood, 172 F.3d at 253; Matula, 67 F.3d at 500-501. The District must
identify all children who are suspected of having a disability, and must also ensure that its
evaluations to determine actual eligibility for services occur within a reasonable time after school
officials are notified of a child who is likely to have a disability. Matula, 67 F.3d at 501.

42.    Under Section 504, recipients of federal funds are required to "provide a free
appropriate public education to each qualified handicapped person who is in the recipient's
jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).
The term "appropriate education" is defined as "the provision of regular or special education and
related aids and services that (i) are designed to meet individual educational needs of the
handicapped persons as adequately as the needs of non-handicapped persons are met, and (ii) are
based on adherence to the procedures that satisfy the requirements of § 104.34, 104.35, and
104.36." 34 C.F.R. § 104.33(b).

43.    The rights bestowed upon students and families by the IDEA, Section 504 and the
ADA are enforceable through administrative and judicial procedures. 20 U.S.C. § 1415; 34

C.F.R. §§ 300.507, 300.510 and 300.512; 42 U.S.C. § 12133.

## VI.  Additional Facts Leading to Liability

44.     The District's treatment of Jeffrey from the 2006-2007 school year to the present

evidenced a complete disregard for his rights under the IDEA, Section 504 and the ADA, as well

as an inexcusably careless attitude toward ensuring that he receive a FAPE, as mandated by these

statutes.

45.     Jeffrey attended the Mother of Divine Providence parochial school during his

primary education years, from his 1997-1998 Kindergarten through eighth grade 2005-2006

school years.  During Jeffrey's primary education years, he exhibited signs of having a mild

learning disability in Reading.  Further, Nancy R., Jeffrey's mother, testified that Jeffrey disliked

reading, he did not want to do it, would "put up a fight to read and get assignments done" and

would wait until the last minute to complete his assignments.

46.     During his eighth grade school year, Jeffrey exhibited difficulties with behavior,

focus, attention, completing and handing in assignments and listening/following directions – all

characteristics connected to ADHD.  All the while Jeffrey attended parochial school, he did not

have issues with truancy.

47.     Jeffrey began attending the District's schools during his ninth grade 2006-2007

school year.  Jeffrey immediately showed signs of needing a special education evaluation due to

his deficient academic performance and escalation of avoidant behaviors, which are consistent

with a diagnosis of ADHD.

48.     However, by Spring 2007, Jeffrey had still not received an evaluation for special

education services.  On or about April 2007, Jeffrey began cutting classes and leaving school,

received Student Behavior Referrals from his teachers, Saturday detention, and was required to

serve two days of In School Suspension ("ISS") for failing to report to Saturday detention.

49.     Further, on May 10, 2007, Jeffrey left the school building in the morning and was returned to school by a police officer. Later the same day, Jeffrey cut his Spanish class and attempted to leave the school building again. The District then discovered - for the first time - that Jeffrey had not been attending his Spanish class <u>for almost one month</u>. He was again assigned to ISS. On May 21, 2007, Jeffrey again left the school building without permission and was assigned to two days of ISS. Nevertheless, the District still did not refer Jeffrey for an evaluation for special education services.

50.     Jeffrey's academic and behavioral/emotional needs continued to worsen during his tenth grade 2007-2008 school year. During the first grading period from September through November 2007, Jeffrey failed Biology, English, and Western Civilization. He received a D in Geometry. In that same period, his report card documents that he was absent from school for only two half-days.

51.     However, Jeffrey's emotional needs, truancy and avoidant behaviors manifested almost immediately during the 2007-2008 school year. These behaviors included numerous instances of cutting classes, receiving detention, and failing to report to detention on September 25 and 29, October 18, 19, 23, and 27, December 19, 2007, and January 5, 17, 18, 22, 23, 26, 28, February 2, 9, and 23, March 6, 7, 8, 11, 26, 27, 28, 31, April 1 and 2, May 20 (assigned to ISS for the rest of the week), and June 5, 2008.

52.     On October 2, 2007, Jeffrey left school without permission in the morning and was escorted back to school by a police officer. At 2:30 p.m. on the same day, Jeffrey again left school without permission and was again escorted to school by a police officer. On November 3, 2007, while Jeffrey completed an assignment during Saturday detention, he indicated that, "I

17

didn't want to go to class, and I was to [sic] tied [sic] to go to a Saturday [sic]," and to make things right he believed he should, "drop out of school."

53.     Although Jeffrey continued to be in dire need of an evaluation for special education services, the District persisted in its failure to evaluate him. Instead, on November 13, 2007 and again on January 23, 2008, the District assigned an escort to take Jeffrey to class since detention "seems not to be decreasing the behavior." On January 26, 2008, while completing an assignment during a Saturday detention, Jeffrey indicated that "I have thought about dropping out if I keep getting escorted." On January 30, 2008, and throughout the Spring of 2008, the District continuously assigned an escort to Jeffrey. As a result, Jeffrey's avoidant behavior increased, he began running away from the escort, and then cut classes earlier in the day to miss his scheduled meeting with the escort.

54.     On February 4, 2008, during a Truancy Elimination Plan meeting, Jeffrey's parents informed the District that Jeffrey was taking Concerta, a known medication for the treatment of ADHD. The District noted that Jeffrey, "starts skipping when falling behind or needs help."

55.     In February 11, 2008, the District informed the family of its intention to file truancy charges against them and Jeffrey, which were indeed filed on April 28, 2008 and June 30, 2008.

56.     In the period from February 12, 2008 through the end of the 2007-2008 school year, the District implemented other failed and misdirected strategies to address Jeffrey behaviors, including assigning him to an afternoon program at an off-site vocational training center (which required Jeffrey to leave the school building, resulting in increased cutting and truancy), changing his math class and not allowing him to participate in school activities.

18

57.     As of March 2008, Jeffrey had been assigned twelve days of ISS, thereby constituting an impermissible change in placement for identified or "thought-to-be" exceptional students under IDEA and Section 504. *See,* 34 C.F.R. §300.536.

58.     On June 5, 2008, Jeffrey's parents, through undersigned counsel, formally informed the District that Jeffrey was diagnosed with ADHD, might have Specific Learning Disabilities in Reading and Writing, among other things, and requested an expedited multidisciplinary evaluation to determine his eligibility for special education under the IDEA and Section 504. The family did not receive a Permission to Evaluate ("PTE") form until approximately one month later.

59.     In the meantime, on June 13, 2008, without first evaluating Jeffrey, the District recommended a change in his educational placement to Vantage Academy ("Vantage") – a program the District denies is a special education placement – because Jeffrey's "attendance issues have been negatively affecting his academic achievement."

60.     At the conclusion of the 2007-2008 school year, Jeffrey failed English. Although he also initially failed Construction Management, his teacher later changed his grade to a D. He received a D in Western Civilization and Biology. Jeffrey was absent for a total of 23 days, 17.5 of which occurred during the third and fourth marking periods – when he had been assigned an escort and to the afternoon vocational program. As a result, Jeffrey was required to repeat tenth grade.

61.     Unfortunately, by letter dated June 18, 2008, the District declined to provide an expedited multidisciplinary evaluation, but indicated that the request for an evaluation would be "discussed" at an upcoming meeting on June 24, 2008. The District did not provide Jeffrey's parents with a PTE form during the June 24, 2008 meeting; rather, the District later mailed it to

19

the family.

62.     On June 30, 2008, after the conclusion of the school year, the District again filed truancy charges against Jeffrey and his family.

63.     On July 11, 2008 and August 12, 2008, the family again requested an expedited evaluation, providing the District with written diagnoses of ADHD indicating that truancy was a manifestation of Jeffrey's disability, and asked the District to withdraw the truancy charges. However, the District declined.  On July 14, 2008, the District illegally changed Jeffrey's placement to Vantage.

64.     Jeffrey began the 2008-2009 school year at Vantage.  In the period from September through December 2008, before the family filed request for a due process hearing, Jeffrey accumulated 21 absences, 3 unexcused late arrivals, and 11 unexcused absences in the afternoon.  In addition, although Jeffrey should have been placed in a Trigonometry math class, since he was the only student at Vantage studying Trigonometry, he was instead assigned to an Algebra class, where he worked quietly in the back of the classroom on Trigonometry worksheets.

65.     The District finally conducted its evaluation of Jeffrey and issued an inappropriate Evaluation Report on October 29, 2008 finding that Jeffrey was not eligible for special education services.

66.     As stated herein, the Hearing Officer found that the District's October 29, 2008 ER was inappropriate and Ordered an IEE at public expense.  The independent evaluator, Dr. Bloomfield, found that Jeffrey presented "a rather complex picture of coexisting conditions that interfere with his ability to access his educational program."  She also found that Jeffrey was eligible for special education services due to his disabilities of a mild reading disorder, ADHD-

20

Inattentive type and that his withdrawal, depression, somatic complaints, substance abuse, attention difficulty, memory difficulty, self-destructive and maladaptive traits render him qualified for treatment and in need of specially designed instruction, and that Jeffrey cannot be educated unless he is in an educational setting that would meet his complex and varied educational needs – including his continued truancy, which is a manifestation of his disability and creates a serious barrier to his education.

67.     Jeffrey continued to be truant during the 2008-2009 school year, and in the period of February through June 2009, he accumulated 41 additional absences (totaling 62 for the school year), 36 additional late arrivals (totaling 39 for the school year), 3 out-of-school-suspensions and a total of 11 unexcused afternoon absences by the end of the school year.  In addition, Jeffrey was disciplined for bringing drug paraphernalia to school.

68.     However,  the Hearing Officer somehow determined that Jeffrey's placement at Vantage was appropriate to address his educational needs, and failed to award compensatory education beyond January 31, 2009.

69.     Jeffrey returned to Vantage during the 2009-2010 school year, and in the period of September 9, 2009 through November 11, 2009, he accumulated 16 absences and 8 late school arrivals.

70.     The District continuously refused to offer Jeffrey special education services until on or about March 2010, when it was Ordered to do so.

71.     The Hearing Officer erred by limiting the Plaintiffs' claims to the two-year period predating the request for due process, and further erroneously failed to apply the two exceptions provided in the IDEA.  Therefore, Jeffrey and his parents should be permitted to pursue his claims from the 2006-2007 school year until the District offers Jeffrey an appropriate program

21

and placement.

72.     The language of the IDEA does not create a "two-year statute of limitations" as the Hearing Officer concluded.  Rather, IDEA-2004 establishes two district time periods.  The first time period is a <u>procedural</u> one and involves the time during which a parent must <u>request due process after learning of</u> the educational deprivation.  20 U.S.C. § 1415(f)(3)(C) ("within two years of the date the parent or agency knew or should have known about the illegal action that forms the basis of the complaint").  The second time period involves a very different, more <u>substantive</u> determination, and entails the <u>adjudication of the actual period of educational deprivation</u> beginning at a point two years <u>prior to the date when the parent or agency learned of</u> the deprivation.  20 U.S.C. § 1415(b)(6)(B).  Subsection 1415(b)(6)(B) requires a hearing officer to consider a complaint:

> which sets forth an alleged violation that occurred *not more than 2 years before the date the parent or public agency knew or should have known about the alleged action* that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this part, in such time as the State law allows, *except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this paragraph.*

20 U.S.C. § 1415(b)(6)(B) (emphasis added).  The IDEA therefore does not create a simple "two-year statute of limitations," but rather a two-year procedural period to bring a claim <u>after</u> the parent knew (or reasonably should have known) of the existence of the claim.  Then, Section 1415(f)(3)(C) authorizes the Hearing Officer to <u>adjudicate</u> substantive claims which began at a point two years <u>before</u> the parent <u>or</u> school entity knew or should have known of the educational deficiency.  20 U.S.C. § 1415(f)(3)(C).

73.     IDEA also references broad exceptions which permit claims well beyond the two year period from the parents' knowledge of the existence of the legal claim being raised.  Section

1415(f)(3)(D) permits parents to raise claims during a period where the district failed to provide information mandated by IDEA, including:

> "(i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
>
> (ii) the local educational agency's withholding of information from the parent that was required under this part to be provided to the parent."

20 U.S.C. § 1415(f)(3)(D).

74.     Here, the record is replete with instances in which the District routinely and continually withheld information from and mislead the family, including without limitation, informing Jeffrey's parents that he did not have a disability and was not in need of special education services, and by failing to conduct appropriate, comprehensive educational evaluations.

75.     The Hearing Officer further erroneously failed to find Jeffrey eligible under IDEA; inappropriately found that the District's denial of FAPE commenced as of May 16, 2008, rather than the beginning of the 2006-2007 school year; and disturbingly found that Jeffrey's then-current placement was appropriate – although the District was not providing Jeffrey with any special education services at that placement.

76.     The Hearing Officer also inappropriately failed to award full days of compensatory education, fashioned the award as an "equitable remedy" and, limited the award of compensatory education to only those days that Jeffrey attended school, despite Dr. Bloomfield's extensive findings that Jeffrey's truancy was a manifestation of his disabilities.

## VII.     Relief Requested

77.     The Defendant had a duty which arose under the IDEA, Section 504, the ADA,

and the laws of Pennsylvania to provide appropriate education and special education services, and to ensure that students with disabilities are free from discriminatory treatment. The Defendant, breached these duties, thus violating Plaintiffs' rights under IDEA, Section 504, the ADA and Pennsylvania law.

78.     The educational losses, damages, and injuries to the Plaintiffs are direct and proximate results of the Defendant's breaches of duty to provide appropriate education and special education services under IDEA, Section 504, the ADA and Pennsylvania law as set forth herein.

79.     The Plaintiffs seek full days of compensatory education for each school day from the first day of school in September 2006 until the District offers Jeffrey an appropriate program and placement for the District's failure to offer him a FAPE.

80.     The Plaintiffs seek reimbursement of expenses incurred as a result of the District's filing of truancy charges against Jeffrey and his family when he clearly required special education services, including payment of fines and counsel fees.

81.     Plaintiffs seek reimbursement for expenses incurred relating to Dr. Bloomfield's testimony at the due process hearing dated December 1, 2009.

82.     Plaintiffs also seek reasonable attorneys fees and costs under the IDEA, Section 504, the ADA, and monetary damages under Section 504.


**WHEREFORE**, the Plaintiffs respectfully request that this Court:

1.     Assume jurisdiction over this action;

2.     Reverse the administrative Order of the Hearing Officer dated February 13, 2010 to the extent that it failed to award Jeffrey full days of compensatory education from September

2006 until the District offers Jeffrey an appropriate program and placement, and to the extent it applied a two-year statutory limitations period, and award full days of compensatory education for every school day in that period, regardless of Jeffrey's attendance at school; however Plaintiffs request that all other aspects of the Hearing Officer's decision be Affirmed;

3.     Consider the administrative record below, and hear additional evidence as necessary to make an accurate, independent decision on the merits;

4.     Order full days of appropriate compensatory education relief for each school day from the 2006-2007 school year;

5.     Order appropriate monetary relief for the Defendant's violations of IDEA, Section 504 and the ADA, including without limitation, reimbursement additional expenses incurred as a result of the truancy proceedings;

6.     Order reimbursement for expenses incurred relating to Dr. Bloomfield's testimony at the due process hearing dated December 1, 2009, pursuant to Section 504 of the Rehabilitation Act and the ADA;

7.     Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs;

8.     Declare the Defendant's actions and omissions to be violative of IDEA, Section 504, the ADA and Pennsylvania law; and

9.      Grant such other relief as this Court deems necessary and proper.


Respectfully submitted,

GCS9654 _____
Gabrielle C. Sereni, Esquire
I.D. # 83899


_____
Tanya A. Alvarado, Esquire
ID# 66591


DM1143 _____
Dennis C. McAndrews, Esquire
ID# 28012

MCANDREWS LAW OFFICES
Attorneys for Plaintiffs
30 Cassatt Avenue
Berwyn, PA
(610) 648-9300 (phone)
(610) 648-0433 (fax)

26